**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

JEFFREY MARK STANTON,
ADC #146059                                                                    PLAINTIFF

4:10-cv-00134-BSM-JTK

DOC HOLLADAY, et al.                                                           DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge
Brian S. Miller.   Any party may serve and file written objections to this recommendation.
Objections should be specific and should include the factual or legal basis for the objection.
If the objection is to a factual finding, specifically identify that finding and the evidence that
supports your objection.   An original and one copy of your objections must be received in
the office of the United States District Court Clerk no later than fourteen (14) days from the
date of the findings and recommendations.   The copy will be furnished to the opposing party.
Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,
or additional evidence, and to have a hearing for this purpose before the District Judge, you
must, at the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.    The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

### I.    Introduction

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 59).  Plaintiff filed a Response in opposition to the Motion (Doc. No. 68), and Defendants filed a Reply (Doc. No. 69).

Plaintiff Jeffrey Stanton is a state inmate incarcerated at the Pine Bluff Unit of the Arkansas Department of Correction (ADC).   He filed this action against Defendants pursuant to 42 U.S.C. § 1983, alleging failure to protect and deliberate indifference to his serious medical needs in violation of his Eighth Amendment right.   Plaintiff asks for monetary relief from Defendants: Sheriff Doc Holladay, Sgt. William Strickland, Richard

Jackson, and Johnny Hicks, who are all employees of the Jail.

Plaintiff made a timely demand for a jury trial; however, before incurring the expense of money and manpower inherent in such a trial, the Court held a Pre-Jury Evidentiary Hearing on August 23, 2011, to determine whether this case should proceed to a jury trial before the Honorable Brian S. Miller, United States District Judge (Doc. No. 51).  Following that Hearing, the Court issued a Partial Report and Recommendation that Defendant Holladay be dismissed from Plaintiff's Complaint and that the remainder of the case was ready to be set for trial (Doc. No. 52).

According to Plaintiff's Complaint and his testimony at the Pre-Jury Evidentiary Hearing, Plaintiff was attacked by his cell mate, Harold Charles, on October 14, 2009, while he was incarcerated at the Pulaski County Detention Facility (Jail) as a pretrial detainee. Plaintiff testified at the Hearing that he was moved to the cell with inmate Charles in September, 2009, because he could get along with basically everyone.  Shortly after moving into the cell, Charles' former cell mate told Plaintiff that Charles was crazy and threatened him on several occasions.  Based on the fellow inmate's statement, Plaintiff asked Defendant Jackson to be moved.  Defendant Jackson denied his request and said he was to get along with Charles.

About October 1, 2009, Stanton again asked Jackson to be moved, but Jackson again denied his request, stating "don't be a pussy." (Doc. No. 5, p. 2.)   Plaintiff then told Defendant Hicks, on October 5, 2009, that Jackson refused to move him.  Hicks responded that he would check into the situation, but nothing happened.  Plaintiff stated at the Hearing

that Charles became more aggressive and when he asked Jackson another time or two to be moved, he again was denied.  Then on October 14, 2009, Plaintiff was in his bunk when Charles stood in front of him with his groin about face level.  Plaintiff told Charles to move away from him numerous times and after the third time, told Charles to move or he would move him.  Charles leaned down and swung and struck Plaintiff in the face; Plaintiff responded by jumping out of the bunk and placing Charles in a headlock.  Charles then slammed Plaintiff's back into the wall.  Defendant Hicks came to the cell, removed Charles, and filled out an incident report.  Plaintiff stated his request to be seen by medical personnel was denied.

## II.   Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Webb, 144 F.3d at 1135, quoting Celotex, 477 U.S. at 324.

4

Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.    Defendants' Motion

#### 1.    Official Capacity

Defendants first state that Plaintiff's money damages claims against them in their official capacities should be dismissed because he does not allege that his constitutional violations were the result of an unconstitutional county policy, practice, or custom.

#### 2.    Exhaustion

Defendants next state Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.  The PLRA mandates complete exhaustion of administrative remedies prior to filing a lawsuit pursuant to 42 U.S.C. § 1983, which includes completing all levels of the Jail grievance process.  Booth v. Churner, 532 U.S. 731, 741 (2001), and Woodford v. Ngo, 548 U.S. 81, 92 (2006).  Defendants present the affidavit of Nancy Brawley, the Grievance Officer at the Jail, who states that the Jail has a grievance policy which allows inmates to file a grievance by completing a grievance form.  (Doc. No. 60-1, p. 1.)  Ms. Brawley investigates the grievance complaints, issues a response, and the inmate may appeal unsatisfactory responses to the Chief of Detention within ten days.  (Id.)  Brawley states that an inmate must appeal the grievance officer's decision in order to fully exhaust the Jail

grievance process as to an issue.  (Id. at p. 2.)

In this particular case, Brawley states that Plaintiff did not file a grievance concerning Defendant Jackson's failure to move him prior to the October 14, 2009 altercation.  (Id.) She states he did file a grievance on October 23, 2009, in which he states he asked Jackson to move him, inmate Charles attacked him, and asks to be seen by a doctor.  (Id.  See also Doc. 60-3.)  According to the grievance officer, Jail officials checked into the situation and handled it the way they thought best.  Plaintiff then appealed the denial of medical care portion of his grievance to the Chief of Detention, and was seen by medical personnel on two occasions thereafter.  (Id.)  Ms. Brawley states Plaintiff's grievance does not mention Hicks or Strickland, and does not contain reference to any of the three Defendants or the failure to protect allegation in the appeal. (Id.)

Based on this affidavit, Defendants state Plaintiff failed to exhaust his administrative remedies as to his failure to protect allegations against them, because he did not appeal that issue to the final stage of the grievance process, and because he did not name Defendants Hicks and Strickland anywhere in the grievance.

### 3.     Failure to Protect

In the alternative, Defendants state that Plaintiff's allegations should be dismissed, because he can not provide evidence to support a failure to protect allegation against them. To support a failure to protect claim, plaintiff must show that his incarceration with inmate Charles posed a substantial risk of serious harm, and that the Defendants actually knew of the risk, but deliberately disregarded it, citing Crow v. Montgomery, 403 F.3d 598, 602 (8th

Cir. 2005).  According to the undisputed facts, Plaintiff and Charles lived in the same cell for almost a month prior to the fight.  In addition, Plaintiff admitted at the hearing that he did not mention his concern to anyone other than Defendants Jackson and Hicks, and also that he never told any of the Defendants about a specific threat of harm from inmate Charles. Defendants note that Plaintiff did not file a grievance prior to the altercation with Charles and told the Court at the hearing that he was moved in with Charles because he could get along with anybody.  Defendants also state Plaintiff provides no evidence that they actually knew of a substantial risk of harm, repeating that Plaintiff admitted he did not tell any Defendants of a specific threat from Charles.  Therefore, in light of this evidence, Defendants state Plaintiff can not support his failure to protect claim against them.

### 4.    Qualified Immunity

Defendants also ask the Court to dismiss Plaintiff's allegations against them based on qualified immunity, stating that the courts have found in similar situations that even when aware of threats, Defendants reasonably believed that the risk of harm to the inmate was not substantial, citing Jackson v. Everett, 140 F.3d 1149, 1151-2 (8th Cir. 1998), and Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996).  Defendants state that a reasonable officer in the Defendants' position could have believed that Plaintiff was not in substantial danger of serious harm, and therefore, they should be afforded qualified immunity.

### B.    Plaintiff's Response

Plaintiff claims he filed a grievance about the incident with inmate Charles, but that it was never returned to him.  He also states that the officers in charge of his care were

negligent and deliberately hurtful, and that their behavior in ignoring an inmate's pleas for help could be considered the same as the deed of assault.   Plaintiff states Defendants were aware that a violent attack by Charles could occur, and therefore, should not be entitled to qualified immunity.

### C.      Defendants' Reply

Defendants state Plaintiff does not raise a genuine issue of material fact regarding his failure to completely exhaust.  In addition, he does not provide facts to show that Defendants had actual knowledge of a substantial risk of serious harm by inmate Charles.  While they may have been aware of facts from which an inference could be drawn that he was at risk of harm, Plaintiff can not show Defendants actually drew that inference, as set forth in Prater, 89 F.3d at 541.  Therefore, Defendants ask the Court to dismiss Plaintiff's Complaint against them.

### D.      Analysis

#### 1.      Official Capacity

Plaintiff's money damages claims against Defendants in their official capacities should be dismissed.  Plaintiff does not dispute Defendant's argument that a suit against them in their official capacities is a suit against their County employer, Pulaski County.  See Kentucky v. Graham, 473 U.S. 159, 165-6 (1985).  Nor does he dispute that in order to establish liability by the County, the law requires a showing of an unconstitutional policy or procedure, or a widespread pattern of unconstitutional conduct.  Doe v. Washington County, 150 F.3d 920, 922 (8th Cir. 1998); Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990).

Plaintiff does not offer proof of an unconstitutional policy or practice; therefore, his money damages claims against Defendants in their official capacities should be dismissed.

>     2.     **Exhaustion**

>     **According to the PLRA,**

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), held unconstitutional as applied on other grounds in Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D.Mich. 2006).   The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.  In Booth v. Churner, 532 U.S. at 741, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  In addition, the United States Court of Appeals for the Eight Circuit held, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.  Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'"  Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000).  In Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003), the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing,

dismissal is mandatory." (Emphasis in original.)   Finally, in <u>Jones v. Bock</u>, 549 U.S. 199,

218 (2007), the United States Supreme Court held that while the PLRA itself does not require

that all defendants be specifically named in an administrative grievance, "it is the prison's

requirements, and not the PLRA, that define the boundaries of proper exhaustion."

    The grievance Plaintiff filed following the altercation with inmate Charles reads as

follows:

> On Monday Oct 12th, 2009, my cellmate Harold Charles went to the unit
> deputy Mr. Jackson and told him to move him before something happened.  I
> asked Mr. Jackson to please move him and he refused saying "This is jail and
> we don't just move people because they are not getting along."  Mr. Charles
> had made several threats to me at that time.  On Oct 16th 2009 Mr. Charles hit
> me on my right cheek while I was laying on my bed.  I jumped up to defend
> myself and engaged in a wrestling match which ended up ripping up muscles
> in my neck and back.  I put in for sick call but as usual no one responded.
> Now I'm in pain barely able to move my neck and I need to be seen by a
> doctor....

(Doc. No. 60-1, p. 13.)  In the section below this Complaint, the form states, "What do you

want to happen to solve your problem?  Plaintiff responded by writing, "A doctor's visit."

(<u>Id</u>.)  The grievance officer responded that the matter was addressed immediately and the

supervisors handled it in the manner they thought best.  (<u>Id</u>. at p. 14.) Plaintiff appealed,

stating, "I don't understand how this matter was taken care of.  I still have not seen the doctor

and my neck and back are still messed up.  Nothing has been done for me to my eyes." (<u>Id</u>.)

    In <u>Johnson v. Jones</u>, 340 F.3d at 627, the Court clearly stated that dismissal of an

action is mandatory once it is determined that exhaustion was not completed at the time the

lawsuit was filed.  <u>See</u> <u>also</u> <u>Lyon v. Vande Krol</u>, 305 F.3d 806, 807, 809 (8th Cir. 2002) (en

banc).  In addition, in <u>Jones v. Bock</u>, the Court stated that while the PLRA does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  549 U.S. at 218.  Defendants argue that Plaintiff's claim should be dismissed for failure to exhaust because he did not specifically name Defendants Hicks and Strickland in the grievance, and because he did not exhaust the failure to protect allegation to the highest level of the grievance process.  However, Defendants do not provide a copy of the Jail inmate grievance procedure, and Ms. Brawley did not state in her affidavit that the Jail grievance procedure includes a requirement that all Defendants be specifically named in the grievance prior to filing a lawsuit against them.  Therefore, that part of their argument must fail.

However, it is clear to the Court that in writing the grievance, Plaintiff was not complaining about a failure to protect, but rather, a failure to provide adequate medical care and treatment.  It appears that his description of the incident is provided as background information, and he clearly states in his grievance that his requested relief is medical care and treatment.  In addition, in his appeal, he complains that the matter was not resolved because "I still have not seen the doctor and my neck and back are still messed up."  (Doc. No. 60-1, p. 14.)  Therefore, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to his failure to protect claims against Defendants Hicks, Jackson and Strickland, and his Complaint should be dismissed.

In light of this Recommendation, and pursuant to the law set forth in <u>Johnson v. Jones</u>, 340 F.3d at 627, the appropriate procedure is to dismiss Plaintiff's Complaint without

prejudice, without further comment on the merits of his claim.   Therefore, the Court will not address the Defendants' remaining arguments in support of dismissal.

**III.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 59) be GRANTED, and that Plaintiff's Complaint against Defendants be DISMISSED without prejudice.

IT IS SO ORDERED this 7th day of November, 2011.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE